# 25-2146-cv/ 25-2614-cv

---

**UNITED STATES COURT OF APPEALS**
**for the**
**SECOND CIRCUIT**

---

**Raymond Kessler, individually and on behalf of all others similarly situated, Hartence Hill, Lazaro Rodriguez, Barbara Abreu, Teresa Herendeen,**

**Plaintiffs - Appellees,**

**v.**

**Pat Zhen, Bilal Amjad,**

**Objectors - Appellants,**

**Enoch Barquero,**

**Appellant,**

**v.**

**The Quaker Oats Company,**

**Defendant - Appellee.**

---

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

---

**REPLY BRIEF FOR OBJECTOR-APPELLANT PAT ZHEN**

---

Pat Zhen
PO Box 366047
San Juan, PR  00936
(787) 547-5010
legal@patzhen.com
*In pro per.*

## TABLE OF CONTENTS

Table of Authorities……………………………………………………………………2
Argument…………………………………………………………………… 4
Class Counsel's lack of candor as to $5,000 appeal bond…………………… 4
The district court considered all objections and appellants have standing….. 6
The district court did not perform an adequate fairness review………………9
All purchasers of Quaker products are bound by the injunction……………10
28 USC 1715 cannot be waived and Quaker did not comply………………..12
Class Counsel inappropriately attacked the Appellant and his standing……13
Flaws exist as to Angeion Group's unauthorized data mining of claims…..19
Class Counsel improperly seeks to require Appellant to prove kickbacks…20
Angeion never provided the terms of the prepaid card……………………...23
Class Counsel misrepresents the term "unclaimed funds"............................23
Class Counsel misrepresents the economic benefit to the class…………….24
Class Counsel failed to address the lack of standing of the class…………...26
The overbroad class definition requires scrutiny of the 1542 waiver………26
Conclusion……………………………………………………………………....27
Certificate of Compliance………………………………………………………..28

**TABLE OF AUTHORITIES**

**Statutes:**

28 USC 1715……………………………………………………………….12-13

28 USC 1746……………………………………………………………….16

California Civil Code 1542……………………………………………….. 27

**Rules:**

Federal Rule of Evidence 408………………………………………….. 15,18

*Adsani v. Miller*, 139 F.3d 67, 71 (2d Cir.1998)...........................................4

*Alexander v. United States*, 509 U.S. 544, 550 (1993). ……….….………… 11

*Berni v. Barilla S.p.A*., 964 F.3d 141, 146 (2d Cir. 2020) ……………………….9

*Boechler, P.C. v. Comm'r*, 142 S. Ct. 1493, 1497 (2022)............................... 7

Denney v. Deutsche Bank AG, 443 F. 3d 253, 264 (2nd, Cir. 2006). ………..27

*In re Cardizem CD Antitrust Litig*., 391 F.3d 812, 818 (6th Cir. 2004) …….... 4

*In re: Optical Disk Drive Products Antitrust*, N.D. Cal. No. 3:10-md-2143… 14

*In re: Stericycle Securities Litigation,* 35 F.4th 555, 572 (7th Cir. 2022) ….. 14,15

*In re Telescopes Antitrust Litig*, N.D. Cal. No. 5:20-cv-03639-EJD …………14

*Kurtz v. Kimberly-Clark,* 142 F.4th 112, 119 (2nd Cir. 2025) ………………..26

*Moses v. New York Times Company*, 79 F.4th 235 (2d Cir. 2023) …... 9

*Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976) …………………. 12

*Ortiz v. Fibreboard Corp., 527 U.S. 815, 848–49 (1999*) …………………… .9

*Pearson v. Target Corp*., 968 F.3d 827, 831 n.1 (7th Cir. 2020) …………….. 15

*T.R. v. Clay-Platte,* 24-cv-00704-SRB, ECF 84 (April 23, 2026) ……………21

**Articles:**

Kauflin, J., Forbes Magazine,
*Class Action Claims Administrator Agrees To Stop Taking Vendor Rebates After Kickback Scrutiny,* May 29, 2026 …………………….22

## ARGUMENT

### I. Class Counsel's refusal to accept Appellant's proffered cost bond and continued demand for three separate $5,000 bonds despite filing a single 69 page brief demonstrates unreasonableness and a lack of candor.

In this case, Class Counsel rested on Appellant's appendix and filed a single, 69-page brief. If they prevail, the maximum costs they will be entitled to are for nine copies of this brief (6 to the Court and 3 unnecessary briefs they voluntarily mailed to the appellants):

| | |
|---|---|
| 69 pages x 9 = 621 pages x $.20 | =$124.20 |
| Covers flat fee | 125.00 |
| Binding $5 x 9 | 45.00 |
| **MAXIMUM TAXABLE COSTS:** | **$299.20** |

A little candor from Class Counsel in admitting their true costs could wrap up the appeal from the excessive cost bonds. After all, Zhen proffered $325.00. A841. Yet, Class Counsel asks this Court to dismiss the appeals because the appellants did not pay the bond and failed to take any step as to the bond – even with this proffer.

The appellants, in total, incurred and paid $1,800 to appeal, which is six times Class Counsel's actual costs. Zhen proffered $325, the undisputed amount of the appeal bond, which is *not required* in this Circuit, but is what the other circuits instruct appellants to do – including the cases cited by Class Counsel. *See In re Cardizem CD Antitrust Litig*., 391 F.3d 812, 818 (6th Cir. 2004)("we expect a party

contesting the validity of an appeal bond to ... make a good-faith proffer of a lesser amount"). Class Counsel cites *Cardizem* then omits the fact that the Sixth Circuit stated the solution was for the Appellant to proffer a lesser amount, which is what Zhen did. The $325 was spot on as to the true amount of potential costs.

This Court has not yet required the proffering of a lesser amount. On the contrary, this Court suggests the appellee to file a motion to have the appeals heard seriatim so the cost bond matter can be ruled upon prior to the merits. *Adsani v. Miller*, 139 F.3d 67, 71 (2d Cir.1998). Class Counsel chose not to file a motion seeking seriatim review. Under the seriatim procedure, this Court could affirm the bond and require payment prior to reaching the merits of the issues.

Zhen's proffer of the $325 was meant in good faith to resolve the matter and went beyond the seriatim procedure found in *Adsani.*

This Court should keep in mind that Class Counsel never asked for a costs bond to recover their taxable costs. Instead, they wanted potential *delay damages*, something that the district court advised them they were not entitled to under *Adsani*'s test. The district court nevertheless imposed a $5,000 bond against Zhen, then separate $5,000 bonds against the other appellants even though the appeals were consolidated, without any analysis of what this Court actually taxes as costs.

The fault of this excessive appeal bond falls upon Class Counsel, who never estimated any form of actual costs they would incur, and did not seek an amount for

their costs. Class Counsel neither provided a fair estimate nor explanation for needing more than a few hundred dollars and they latched on to the district court's arbitrary number. Once Class Counsel knew the $5,000 *per appellant* was grossly excessive, they had an obligation of candor towards this Court and to be reasonable.

The lack of reasonableness of Class Counsel in refusing to admit a realistic amount of what they will incur demonstrates that the purpose of the bond is not to secure costs, but to set up a road-block to this appeal. After all, this Court does not "think it either bizarre or anomalous for the amount of the bond to track the amount the appellee stands to have reimbursed. One could as easily call the converse situation 'anomalous." *Adsani* at 75.

Clearly, three separate $5,000 appeal bonds, with the latter two imposed after knowing the case was consolidated, is not the amount Class Counsel "stands to have reimbursed," but is 50 times the amount and must be reversed.

## II. All objections were considered by the district court and no finding existed that the appellants lacked standing

### (a) <u>Waiver</u>

Contrary to Class Counsel's arguments, the district court reached the merits of each and every objection, albeit using the wrong standard of review. It never found not standing. For example, a person could not complain about the procedure of not filing objections on the docket until after the timely objections were not filed.

Moreover, Class Counsel filed their declarations and motion for attorney fees after the period for objections already expired. Class Members cannot logically object to the content of these documents until they are available for review. Zhen filed his objections promptly – within 10 days - after Class Counsel filed their motion consisting of hundreds of pages of declarations.

Other objections cannot be waived. Zhen's argument about the standing of the class representatives, and the class itself due to the inclusion of non-harmed class members, can be raised at any time, even *sua sponte.*[1] In addition, the district court's awarding an injunction against every consumer in the United States prohibiting them from disparaging the settlement or any of 90 plus Quaker Products constitutes plain error considering no warning existed in the short or long form Notice provided to consumers or the advertisements targeted to the class.

**(b) Standing**

In this case, the Class consists of practically every consumer in the United States. Purchasing one of approximately 90 different Quaker products from the "first date of manufacture" places the consumer in the Class.

Regardless, the district court did not find that appellants lacked standing. Rather, Class Counsel appears to be complaining about the terms of their own

[1] Jurisdictional requirements cannot be waived or forfeited, must be raised by courts *sua sponte*, and, as relevant to this case, do not allow for equitable exceptions. *Boechler, P.C. v. Comm'r*, 142 S. Ct. 1493, 1497 (2022).

settlement and how they structured it. As they admit on page 11 of their brief, Class Members can submit claims "not accompanied by Proof of Purchase" and the claims are not limited to any specific region of the United States. Yet at pages 24-25 of the brief, they complain that Zhen referenced "other products he claims to have purchased "including one that was manufactured in 2021, years *before the recall at issue in this case*." Class Counsel falsely states that Zhen did not provide the UPC code or best by date from the package. However, Zhen provided a picture of the UPC code. A566, A581. The specific lot number was visible from the photo. A581. These were purchased in 2021. Zhen also declared that he only listed two products on the claim form because it was limited to that amount without receipts. Zhen listed the names of the products he purchased. Obviously, to purchase them, it had to be subsequent to the first date of manufacture.

At page 40 of their brief, Class Counsel admits that "The Class Period begins at the first date of manufacture of each of the Covered Products." The plain language of this definition has nothing to do with the "recall at issue in this case." Notably, Class Counsel also complains about the other appellants who "claim that they purchase a Covered Product in the United States," but they include no information to dispute the assertion.

The fact that claimants are members of the class despite products being purchased years before the recall demonstrates that the Class itself lacks standing due

to a lack of injury, not that Zhen lacks standing to object. Class Counsel and Quaker Oats authored this broad, all encompassing, definition of the class. Certainly, the "first date of manufacture" could have been in 1985.[2]

### III. The district court did not perform an adequate fairness and jurisdictional analysis with respect to the settlement.

While Class Counsel goes down the issues and attempts to justify the idiosyncrasies with respect to the settlement, they fail to show that the district court performed the proper fairness analysis. Where a court "certifies for class action settlement only," though, "heightened attention to the justifications for binding the class members" is required. *Berni v. Barilla S.p.A.*, 964 F.3d 141, 146 (2d Cir. 2020)(*quoting Ortiz v. Fibreboard Corp., 527 U.S. 815, 848–49 (1999)*).

The proper test is one of fairness and adequacy, considering Rule 23(e) factors. *Moses v. New York Times Company*, 79 F.4th 235 (2d Cir. 2023) and there is no presumption of fairness in arms length settlements.

It appears that the district court applied a test that a settlement should be approved if similar language occurred in other settlements, for example, it cited cases

[2] Class Counsel opines at page 24 of their brief that, when questioned about the products Zhen purchased, "he was confused and unable to do so with any clarity or specificity." However, this was a privileged and protected settlement telephone call between Zhen and Class Counsel summarized in violation of Federal Rule of Evidence 408. Class Counsel provided no transcript of the call, just their opinion. Zhen objects to Class Counsel's inclusion of this opinion.

where a non-disparagement clause was accepted in the Western District of Pennsylvania even though that district court did not analyze the clause and no objections were received. As to most objections, the district court cited other settlements with similar terms instead of looking at the present settlement in its entirety. In this case, Class Counsel failed to demonstrate that the district court performed a full fairness analysis, let alone paid "heightened attention" to the serious flaws with the settlement.

## IV. Anyone who purchased any of over 70 Quaker products from the first date of manufacture is bound by the non-disparagement injunction.

Class Counsel suggests that none of the appellants are bound by the non-disparagement clause; however it is Quaker that maintains the right to enforce the clause against every purchaser of their products. Quaker has forsaken the right to file a brief to justify this clause or explain its purpose. Quaker did not release the appellants from the injunction.

There exists no judicial decree that the appellants are neither bound by this settlement nor the injunction. Indeed, the appellants – having purchased a Quaker product – "shall make no statements, including statements to the press or any other public statements, that disparage Defendant, any Released Party, or any of the Covered Products, or accuse Defendant or any Released Party of any wrongdoing regarding this Settlement or Litigation or the subject matter thereof." A144.

The settlement agreement includes every purchaser of Quaker products, the list of which is too numerous to repeat but can be found at A128-129. The "Class Period" means the earliest date of manufacture of any Covered Product through the date of Preliminary Approval of the Settlement, inclusive since the "first date of manufacture." A128.

Class Counsel does not justify not notifying Class Members of the injunction in the notice to the class or the advertisements. Class Counsel fails to identify the purpose of this clause, how it is "fair," why it benefits the Class, or how a person not notified of this Class action could be bound by it.

The term "prior restraint" is used "to describe any administrative or judicial order forbidding certain communications when issued in advance of the time that such communications are to occur." *Alexander v. United States*, 509 U.S. 544, 550 (1993). The prior restraint injunction against speech in this case applies to each and every purchaser of a Quaker product since the first date of manufacture, cannot be justified, is brazenly unconstitutional, and absolutely unfair, with zero analysis by the district court other than stating that a court in Pennsylvania approved similar terms.

Because a prior restraint on otherwise protected speech is the "most serious and the least tolerable infringement on First Amendment rights," *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976), the injunction cannot stand.

## V. 28 USC 1715 cannot be waived and Quaker Oats failed to comply, nullifying the settlement.

Class Counsel argues that the 28 USC 1715 notification requirements issue was waived. Ironically, Quaker Oats should be defending this issue, not Class Counsel at the expense of the class members. This is because 28 USC 1715 places the obligation on the settling defendant, not the claims administrator. 28 USC 1715(b) ("each defendant that is participating in the proposed settlement shall serve…"). It is unclear why the Settlement Administrator, using class members' settlement funds, is attempting to fulfill the obligation of Quaker Oats.

Regardless, 28 USC 1715 can not be waived as it even allows a collateral attack to the settlement. Specifically, 28 USC 1715(e) provides that a class member may "refuse to comply with and may choose not to be bound" by a settlement where compliance did not occur. Obviously, this can be raised post-judgment. Regardless, the district court addressed the issue.

Class Counsel argues that its settlement administrator, not Quaker Oats, complied by mailing a form letter to the attorney generals; however, the record is devoid of analysis that the attorney generals are the appropriate state officer as required by the statute. 28 USC 1715(a)(2). Indeed, this is a health related matter involving a product recall of bacteria infestation. In New York, for example, the appropriate agency would be the New York State Department of Agriculture and Markets, not the Attorney General. Each state has a similar official.

Therefore, the settlement is null as every class member may "refuse to comply" and "may choose not to be bound." 28 USC 1715(e).

## VI. Class Counsel cites inadmissible evidence and inaccurate insinuations to personally attack, claim no standing exists, infer the existence of fraud, and suggest an extortion attempt, while misrepresenting the motives of the Appellant just to avoid addressing the merits of the objections.

A good portion of Class Counsel's brief centers on attacking the appellants rather than addressing the flaws in the settlement. This is a Class Action about oatmeal snacks wherein practically everyone in the United States is a class member because the class definition begins at the time the product was first manufactured.. There neither exists a need nor reason to fabricate standing since most people purchased one of the products at some point since the first date of manufacture.

Throughout Class Counsel's brief, they infer that Appellant Zhen does not exist and is a serial litigator. For example at page 5 of their Brief, ACMS p. 14, they state, "he is a serial objector and that there is substantial information reasonably indicating that 'Pat Zhen' may be a fictitious or stolen identity." Class Counsel spews this claim even though their own credit reports confirm Zhen's nexus to Puerto Rico. A715-716 (credit report verifying Puerto Rico nexus and Rhode Island property ownership).

Zhen, giving into extreme pressure from Class Counsel, attached a copy of his Puerto Rico driver's license to the Notice of Appeal. A815. Nobody should have to

do that to fend off a barrage of attacks in a court proceeding. Class Counsel's duty is to protect the Class Members, not to disparage them.

In the district court, Class Counsel repeatedly referred to Zhen as a serial objector as they did on page 5 of their Brief in this Court. However, Class Counsel could only come up with two proceedings where Zhen objected. A757. First, they cite a pending appeal from *In re Telescopes Antitrust Litig*, N.D. Cal. No. 5:20-cv-03639-EJD, but failed to mention that the Ninth Circuit refused to dismiss that appeal and a decision remains forthcoming on the merits. Next, Class Counsel misrepresents *In re: Optical Disk Drive Products Antitrust Litigation*, N.D. Cal. No. 3:10-md-2143, ECF 3108. In that case, that Class Counsel filed a motion for a second distribution. Zhen objected on the basis that the money calculations were to be *pro rata*. The district court agreed and directed a *pro rata* distribution, but stated Zhen's objection, to the extent it was not resolved, was denied. These can hardly be called "serial objections."

In *In re: Stericycle Securities Litigation,* 35 F.4th 555, 572 (7th Cir. 2022), the Seventh Circuit noted references to counsel as a "notorious professional objector" and characterized his firm as an "objection-factory." The Court advised that it disapproves of such rhetoric. See also *Pearson v. Target Corp*., 968 F.3d 827, 831 n.1 (7th Cir. 2020) (noting avoidance of the phrase "professional objector" because "the merits of an objection are relevant, not amateurism or experience").

The Seventh Circuit found that "Lead counsel's ad hominem attack on [the Objector] was not professional and served only to emphasize the weakness of lead counsel's own arguments." *Stericycle* at 572 (7th Cir. 2022).

**(a). Zhen has standing**

Class Counsel suggests that Zhen lacks standing because, after confidential F.R.E. 408 settlement discussions, Class Counsel filed an affidavit citing his *opinion*, without any form of transcript or summary, that, during those discussions, Zhen "was confused and unable to [discuss purchased products] with any clarity or specificity." *See* Appellees Brief at 24 (ACMS p. 33). There exists no context or description of the alleged confusion.

Despite this settlement specifically not requiring any form of proof of purchase, A135, Class Counsel complains at page 25 (ACMS p. 34) that "neither appellant provided any proof of purchase." They complain that Zhen "attempted to manufacture standing by vaguely referencing other products he claims to have purchased, including one that was manufactured in 2021, years before the recall at issue in this case." *Id*, citing A565-566.

Indeed, Class Counsel's argument about a 2021 product constitutes a problem with the Class Period, not a problem with Zhen's objection. Simply put, the Class begins on the first date of the product's manufacture.

Class Counsel cites his own brief in the district court, A530-531, to baldly state that Zhen's claim form, which purportedly listed "Quaker Chewy Yogurt Yogurt Variety Pack Chewy" and "Quaker Assorted Chewy" did not fall into the Class. However, this problem is with the online claim form limitations, not Zhen. The settlement agreement, A128-129, lists over 70 products as being included with no specific sizes. On that list are "Quaker Chewy Granola Bars Yogurt Variety Packs," and "Quaker Big Chewy Bars Variety Pack". A128-129. These are just two items that Zhen purchased of probably hundreds. A681.

The claim form is not determinative of the class. Consumers can only list two products if they have no proof of purchase although they, through the purchase of over 70 products, are members of the class. Zhen expressed this through multiple declarations[3] and even photographs of products he purchased.

**(c). No extortion attempt occurred**

Class Counsel repeatedly made a specious claim to the district court, and now this Court, that Appellant Zhen attempted to extort them. Lacking candor, he fails to advise the truth about the dialogue.

[3] For example, Zhen declared pursuant to 28 USC 1746 that, "I listed Quaker Chewy Yogurt Variety Pack and Quaker Assorted Chewy 48 pack on the electronic claim form. These products were listed as included in the case. However, in addition to this, I purchased Quaker Big Chewy Bars Chocolate Chip, Quaker Big Chewy Bars Variety Pack, Quaker Chewy Bars Chocolate Chip, Quaker Chewy Bars Chocolate Chunk, and other Quaker granola and chewy bar products while in the United States." A681.

At 8:40 p.m. on July 13, 2025, Class Counsel wrote to Zhen, *inter alia,* "I also received a call the other day demanding money to make the objection go away by an individual that is also associated with one of your addresses that you submitted to Angion in other cases." A696. Zhen responded at 9:24 p.m. on the same night, "if you are inferring that an individual offered to withdraw my objection for a fee, that would be hard for them because it was never docketed and is not known to the public. I am aware that Rule 23 requires court approval for any payment to a class member who provides benefit to the class. Considering the level of service awards to the plaintiffs in this case will not exceed $500, it should be plain as day that I did not file my objections to achieve a service award. To be clear, I neither asked for nor will I ask for any form of payment. My objections were filed to compel better administration and judicial oversight of a flawed process." A696.

At 10:04 p.m., Class Counsel wrote, "Pat, the troubling call I received was directly related to your objection. It was from someone named 'Karla' claiming to be calling on behalf of the 'Zhen' objection. Do you know anyone by that name? Thanks." A696.

At 10:36 p.m., Zhen wrote: "I know many people with popular names, but none are aware of the objection which raises suspicion about the call. The only persons who know of the objection are those attached to this email, the pro se office of SDNY, and the judge's chambers. Do you have a Caller ID and/or ANI of the call?

I assume you entered it in your billing time sheet and it would be discoverable. What was the time and date of the alleged call?"  A695.

Class Counsel did not provide the Caller ID, time or date.  Rather, he downplayed it and stated, "Pat, your name is noted as an objector on the public docket in the letter I emailed to you that was filed with the court."  A695.

Notably, at no time in the emails did Class Counsel mention $100,000.  This figure came later when Class Counsel attempted to infer that Zhen was extorting him, as he did to this Court.  However, Class Counsel never advised this Court of the time, date, Caller ID information, or the telephone number the purported extortionist called.

At all times material, Zhen and Class Counsel were communicating, so it appears bizarre, at best, that some third-party would call Class Counsel and request $100,000 to make the Appellant's arguments go away.  Class Counsel continues to spew this allegation despite Zhen advising within 30 minutes of his email that no payment relating to the objections would be accepted.

While this conversation, and even an inappropriate offer to settle for payment, would ordinarily be confidential under F.R.E. 408, considering that Class Counsel already published the communications, Zhen does not object to this Court reviewing the conversation that makes it clear no extortion attempt occurred.

## VII. Class Counsel's fraud arguments are rhetorical and demonstrate the flaws with Angeion Group's unauthorized data mining of claims data from other cases.

There needs to be a fraud prevention program as to claims, but it must be rational and the claimant must receive a clear notice that enables them to intelligently respond or challenge the determination. The problematic procedure in this case relates to the lack of judicial oversight. Angeion Group established a system that accessed, without authorization from those courts, hundreds of millions of claims in *other cases*. A723. If the data did not match exactly, such as a person using a different email or telephone number, the claim was denied without a real explanation, just telling consumers to try again without privacy software. A724.

In their brief, Class Counsel never addresses Angeion's surreptitious use of claims data from other cases without notifying those courts. Rather, Class Counsel suggests Angeion used "adequate and customary procedures." *Brief* at 37 (ACMS p. 46). Class Counsel stated that it, the defendant, and the district court "all retain oversight regarding fraud detection." Hoping this Court repeats it, Class Counsel cites rhetoric from a district court case praising Angeion's system; but that court likely did not know that Angeion literally pilfered this data from other court cases without notifying the district judges.

To affirm this program puts millions of consumers in harm's way. Class Counsel does not even acknowledge that Angeion accesses, by its own admission,

over 100,000,000 claims from other cases. A723. Class Counsel does not deny that Angeion took this data without the permission from those courts. Finally, Class Counsel fails to explain how a consumer changing their email or telephone number from a prior claim creates an inference of fraud as Angeion stated.

Class Counsel is correct that Angeion's fraud detection program is subject to oversight by the Court. However, when notified of the unauthorized access of claims data, Angeion's admission that an email or phone number change from a prior case creates a fraud trigger, and the vague notice to the consumer telling them to "try again," neither the court nor Class Counsel stepped in. Instead, the district court glossed over the issue and Class Counsel continues to attempt to excuse Angeion's conduct.

Even if Angeion's accessing prior claims data was legitimate and authorized, and if merely changing your phone number or email address from a claim in a prior case warranted requiring an explanation, Angeion's notification to the consumer should be more specific than telling the claimant to "try again" without using privacy software.

## VIII. Class Counsel improperly attempts to place the burden on consumer objectors to "prove" that the claims administrator is taking kickbacks rather than simply disclosing the facts.

Zhen objected because Angeion has routinely accepted kickbacks from the banks holding the escrow and issuing the debit cards, all creating invisible fees and

increased costs not approved by the court. Zhen showed that a class action is pending against Angeion and several district courts have begun requiring reimbursement and disgorgement.

Class Counsel, instead of asking Angeion to provide disclosure of its side-agreements or investigating this serious situation, merely brushes it aside and states that this Court should "reject appellants' unfounded allegation that Angeion is receiving kickbacks… There is no evidence on the record to suggest that Angeion has taken kickbacks or engaged in any unethical behavior whatsoever with respect to the administration of this case." *Brief* at footnote 6.

Zhen's argument is that the district court, when receiving the objection, should have required Class Counsel and Angeion to disclose the arrangements. District courts around the United States are beginning to recognize their fiduciary obligation.

The Western District of Missouri in *T.R. v. Clay-Platte,* 24-cv-00704-SRB, ECF 84 (April 23, 2026), provides an example of what a court needs to do with respect to claims administrators like Angeion.[4] Without any objection, that court issued an Order directing Class Counsel to "provide an itemized accounting of all fees, expenses, and charges made to the settlement fund. Such fees, expenses, and

[4] In addition, the Missouri court directed Class Counsel to explain "Angeion's procedures for securely handling class member data. This includes, but is not limited to, technical and administrative controls, retention and destruction policies, and crisis response protocols. Information regarding the settlement administrator's acceptance of responsibility and maintenance of sufficient insurance in case of errors shall also be provided."

charges include, *but are not limited to, rebates, awards and/or credits from any vendor or subcontractor, and any financial benefits from any banks or any third-party organization.* Angeion shall also identify all sub-contractors and any mark-ups or margins added to sub-contractor invoices. After a settlement administrator is approved by the Court, the settlement administrator shall file an accounting within fourteen (14) days of being approved, and quarterly thereafter."

What happens when a district court directs Angeion Group to explain their contracts? According to Forbes Magazine, Angeion promptly agrees not to take kickbacks in that particular case. *See* Kauflin, J., Forbes Magazine, *Class Action Claims Administrator Agrees To Stop Taking Vendor Rebates After Kickback Scrutiny,* May 29, 2026.[5] The sub-title to this article is, "Amid criticism that claims administrators have secretly profited from class action payouts, Philadelphia-based Angeion agreed not to accept rebates from prepaid card issuers, banks or other vendors *in a Kansas City data breach case*." *Id.*

So while Angeion agreed in *that* case not to take kickbacks, in the present case, the judge did not review the Angeion arrangement for fairness despite being notified through an objection. Class Counsel brazenly turns a blind eye to it and instead of working for the class, spends money and time to conceal the Administrator's practice.

---

[5] Accessed from: https://www.forbes.com/sites/jeffkauflin/2026/05/29/class-action-claims-administrator-agrees-to-stop-taking-vendor-rebates-after-kickback-scrutiny/

On remand, the district court should be directed to explore whether Angeion engaged in any type of kickback or commission program and if it did, to consider disgorgement.

## IX. The terms of the prepaid cards have neither been provided to the district court nor the persons who will receive the cards.

Class Counsel jumps on the district court's mistaken understanding that a summary disclosure of fees constitutes publishing the terms and conditions of the prepaid card prior to a consumer choosing it. Understand, once the card is received, if the consumer does not agree to the terms, they simply do not receive their money and monthly inactivity fees eat the balance. The undisclosed terms and conditions include mandatory arbitration, class action waiver, and terms allowing Angeion's subcontractor Blackhawk to freeze or block the funds at their sole discretion. A629-637 {standard Pathward/Blackhawk card agreement).

## X. Class Counsel misrepresents the term "unclaimed funds" to attempt to overcome the escheatment argument.

In this case, we are not talking about "unclaimed funds," being money that was left over and not subject to a claim. Rather, Appellant's issue is with claimed money that the claimant did not receive because the check was misdelivered, the electronic payment went to SPAM, the PayPal or ACH payment was blocked, or the link to the digital prepaid card was not received.

These funds belong to the claimant who requested them and are not "unclaimed funds" properly subject to *cy pres* distribution.

This type of money is required *by law* to be turned over to the unclaimed property agencies of the various states. An agreement or distribution plan cannot overcome the statutory requirements of the unclaimed property laws, some of which have criminal or civil penalties for non-compliance.

Angeion Group must be required to deliver the payments to claimants and, if unsuccessful and the amount exceeds the unclaimed property limits, turn those funds over to the appropriate agency.

## XI. Class Counsel misrepresents the economic benefit to the class and the justification for attorney fees.

This is a $6.85 million settlement, which Class Counsel will take one third of, that Class Counsel misrepresented to the Court as providing a 25% total disgorgement theory of damages and a 74% price premium theory of damages. *See* Brief at 45 (ACMS p. 54).

These percentages have no basis in reality because they are based on Quaker's 2024 recall and the sales for a small period of time around that recall. However, the definition of the class involves hundreds of products Quaker produced from the date of first manufacture. The sales during this period of time – which spans decades – are billions of dollars.

For this reason, since anyone can claim against the fund who purchased a product in 1998, it cannot be said that the paltry $6.85 million dollar fund has any merit.

More problematic, as explained in the opening brief, the motion for attorney fees was filed after the objection deadline, foreclosing the ability to analyze the position of Class Counsel. We now see that Class Counsel provided no time tables to the district court, just generic summaries of total hours.

Furthermore, Class Counsel did not discover the salmonella infestation at Quaker. On the contrary, Quaker recalled the products with the involvement of state and federal officials. Class Counsel merely capitalized on the work of the federal agencies. One factor that must be considered is whether there existed other settlements that would reduce the risk of the lawsuit not resulting in a payment. *Stericycle*, 35 F.4th at 564. In this case, Class Counsel knew there was a recall, knew that Quaker offered refunds, and also knew that the FDA was involved.

It is impossible to determine whether this settlement warrants a 33% payment to Class Counsel without full information. The district court needs to fully analyze the amount the class is receiving and whether Class Counsel deserves 33% of it. *See Kurtz v. Kimberly-Clark,* 142 F.4th 112, 119 (2nd Cir. 2025)(symbiotic review entails directly comparing the allocation of the total recovery between the class and class counsel).

## XII. Class Counsel failed to address the lack of standing of the class.

Too busy arguing to this Court that Appellant Zhen does not exist and never purchased any of the nearly 70 Quaker products at any time since the first date of manufacture, and without citing a single case, Class Counsel addresses the broad definition of the class by stating that, "nor, as appellants argue, is the Class overbroad…" *Brief* at 40 (ACMS p. 49). Class Counsel explains, "The Class Period begins at the date of the manufacture of each of the Covered Products." *Id*.

The problem is that the "date of the manufacture of each of the Covered Products" could span decades and the payment to the class is only $6.85 Million less 33% for Class Counsel. Under this scheme, the majority of the purchasers falling into the class have no correlation to the recall in 2024.

Simply put, "no class may be certified that contains members lacking Article III standing." *Denney v. Deutsche Bank AG*, 443 F. 3d 253, 264 (2nd, Cir. 2006).

## XIII. The vastly overbroad class definition requires scrutiny of the California 1542 waiver.

As Zhen demonstrated in the opening brief, California 1542-type waivers are not appropriate in a Class Action context, especially where many absent class members are not aware of the lawsuit and did not individually consent as those statutes require for a valid waiver. In this case, the situation appears particularly concerning considering the recall for contamination occurred over a few months in

2024, but the class definition includes all consumers who *ever* bought over seventy products beginning on the first date of manufacture.

While it is appreciated that *bodily injury* claims are excluded from this, the waiver cannot be justified for a purchaser of the products from 2022 that fall into the class. Obviously, any such claims a 2022 purchaser would be settling are something other than bacteria from 2024.

**XIV. Conclusion**

For the reasons in the opening brief, and above, the decision of the district court approving the class definition, injunction against any purchaser of Quaker products, and the terms of the settlement cannot stand. There are simply too many unresolved problems with this settlement.

Respectfully submitted,

*/s/ Pat Zhen*
Pat Zhen
APPELLANT *in pro per.*

Certificate of Compliance With Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

1. This document complies with the word limit of 7,500 limit excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 5,921 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because: this document has been prepared in a proportionally spaced typeface using 14 point Times New Roman in Google Docs.

Dated this 20th day of August, 2026.

_*/s/ Pat Zhen*
Pat Zhen